**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3217
_____

MARICARMEN ESCUTIA DIAZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206-912-874)
Immigration Judge: Steven A. Morley
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
June 23, 2021
_____

Before: CHAGARES, PORTER, and ROTH,
*Circuit Judges*.

(Filed: November 17, 2021)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Maricarmen Escutia Diaz, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding the denial of her applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). After denying Escutia Diaz's applications for relief from removal, an Immigration Judge ("IJ") ordered that Escutia Diaz be removed to Mexico. We conclude that (1) the agency's denial of Escutia Diaz's request for a continuance before the merits hearing was not an abuse of discretion, (2) the agency's finding that Escutia Diaz failed to show a nexus between the harm she has suffered or will suffer and a protected ground is supported by substantial evidence, and (3) the agency's finding that Escutia Diaz would not more likely than not be tortured upon return to Mexico is supported by substantial evidence. So we will deny the petition for review.

I

Escutia Diaz first came to the United States in 2007 but returned to Mexico in 2009. She returned to the United States in 2014 with her son in response to threats of violence from the Knights Templar, a violent gang in Mexico. She requested asylum and was referred to immigration custody. An asylum officer concluded that she possessed a credible fear of harm if returned to Mexico.

Escutia Diaz appeared at a hearing before the IJ in 2015. The IJ asked Escutia Diaz to prepare a written submission delineating a proposed particular social group. Instead of submitting one, she moved for a continuance. She claimed that the Attorney

General's issuance of *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), *vacated*, 28 I. & N. Dec. 307 (A.G. 2021), "changed the landscape" for her asylum claim and "require[d] counsel to rethink and probably reconstruct the proposed social group." A.R. 320. She indicated that she had retained an expert who needed additional time to prepare an opinion consistent with the new legal landscape. The Department of Homeland Security opposed a continuance because the Attorney General's decision had been released four weeks prior to Escutia Diaz's motion, the merits hearing was still three weeks away, and it was "not clear why or how the opinion of [the expert] would impact [the] case and why his opinion was not previously sought." A.R. 316. The IJ denied a continuance, reasoning that, since Escutia Diaz's case was "not a domestic violence case," the decision in *Matter of A-B-* "[did] not undermine it." A.R. 313.

The IJ presided over a merits hearing in 2018. Escutia Diaz's counsel confirmed that Escutia Diaz's particular social group was her "family." A.R. 82. Escutia Diaz testified at the hearing that she left Mexico in 2014 due to threats from the Knights Templar. She claimed that two armed members of the group approached her at her business, demanded a monthly payment of 2,500 pesos, and left without further incident. Escutia Diaz testified that she did not know why the Knights Templar targeted her. Asked if she knew of other businesses threatened by the Knights Templar, she testified that she did, and that those businesses eventually closed.

Escutia Diaz also testified that her family members in Mexico have not been threatened by the Knights Templar since 2014. But her mother was threatened by a predecessor to the Knights Templar in 2007. She mentioned one other incident: In 2012,

her brother-in-law was kidnapped by the Knights Templar, and was released a week later when his family paid a ransom of 200,000 pesos.

The IJ found Escutia Diaz credible but denied her applications for relief from removal. The IJ determined that Escutia Diaz did not suffer past persecution because the threats she experienced in Mexico "were not highly imminent or concrete." A.R. 40. Escutia Diaz also did not possess a well-founded fear of future persecution, for two reasons. First, it would be reasonable for Escutia Diaz to internally relocate in Mexico. Second, there was no evidence that the Knights Templar targeted Escutia Diaz because of her family membership rather than because they wanted money; indeed, Escutia Diaz's family members remained in Mexico after her departure and have not been targeted by the Knights Templar. Because Escutia Diaz was ineligible for asylum, she was also unable "to establish the higher burden of proof required for withholding of removal." A.R. 43. Finally, the IJ denied Escutia Diaz CAT relief based on a finding that "it is not more likely than not that [she] would be subjected to any harm, let alone harm rising to the level of torture," if she were removed to Mexico. A.R. 44. In support of this finding, the IJ noted that Escutia Diaz's family has not been harmed by the Knights Templar since 2014 and that Escutia Diaz could relocate within Mexico to the extent there is some risk of harm from the Knights Templar.

Escutia Diaz appealed to the BIA, which upheld the IJ's decision. The BIA agreed with the IJ that Escutia Diaz did not experience any harm rising to the level of past persecution. It also ruled that Escutia Diaz's family is not a cognizable social group and that, even if it were, Escutia Diaz failed to demonstrate that her membership in that group

4

was or will be a central reason for targeting her. The BIA noted that another business had also been targeted for extortion, and that the Knights Templar did not otherwise harm members of her family. With the nexus requirement unmet, Escutia Diaz was ineligible for both asylum and withholding of removal. The BIA then upheld the IJ's denial of CAT relief "for the reasons stated in the [IJ's] decision," as Escutia Diaz "d[id] not specifically address the underlying bases" of the IJ's denial of her CAT claim in her brief. A.R. 4–5. Finally, the BIA upheld the IJ's denial of Escutia Diaz's motion for a continuance. The BIA explained that Escutia Diaz failed to articulate what additional evidence or theories she could have put forward had she been granted a continuance. Consequently, the IJ properly denied a continuance for failure to show good cause.

This timely petition for review followed.

II

We have jurisdiction over this petition under 8 U.S.C. § 1252(a). Where, as here, "the 'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both decisions." *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017) (quoting *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012)).

"We review the denial of a continuance for abuse of discretion," meaning that we will uphold the IJ's decision unless "it is arbitrary, irrational or contrary to law." *Khan v. Att'y Gen.*, 448 F.3d 226, 233 (3d Cir. 2006). Whether an IJ has abused his discretion depends on "the facts and circumstances of each case" rather than "the application of

5

bright-line rules." *Id.* (internal quotation marks omitted) (quoting *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003)).

"We review challenges to the agency's factual findings under the familiar substantial-evidence standard." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021). Under our "highly deferential" review, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). "The substantial-evidence standard does not permit this Court to re-weigh evidence or to substitute its own factual determinations for those of the agency." *Thayalan*, 997 F.3d at 143. Rather, we ask only "whether the agency's finding qualifies as one of potentially many reasonable possibilities." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1678 (2021). An agency determination that an alien has failed to establish a nexus between past or future harm and a protected characteristic is a factual finding reviewed for substantial evidence. *See Thayalan*, 997 F.3d at 138. So is an agency determination than an alien has not shown a likelihood of future torture. *See Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 & n.11 (3d Cir. 2020).

III

A

Escutia Diaz seeks asylum and withholding of removal based on her membership in a proposed particular social group. An asylum applicant bears the burden of establishing that her membership in a particular social group (or other protected characteristic) "was or will be at least one central reason for persecuting the applicant." 8

U.S.C. § 1158(b)(1)(B)(i). An alien seeking withholding of removal under 8 U.S.C. § 1231(b)(3)(A) also bears the burden of establishing the required nexus between the harm she suffered or will suffer and her membership in a particular social group. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015) ("To establish eligibility for withholding of removal based on membership in a particular social group, an applicant must establish both that the group itself is properly cognizable as a 'social group' within the meaning of the statute, and that [her] membership in the group is 'one central reason' why [she] was or will be targeted for persecution."). "For a protected characteristic to qualify as 'one central reason,' it must be an essential or principal reason for the persecution." *Id.* at 685. "As a result, neither asylum nor withholding of removal may be granted 'when the characteristic at issue played only an incidental, tangential, or superficial role in persecution.'" *Thayalan*, 997 F.3d at 142 (internal quotation marks omitted) (quoting *Gonzalez-Posadas*, 781 F.3d at 685).

Escutia Diaz also seeks CAT protection. To be eligible for such protection, an alien must establish "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (2021). The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)).

B

With these principles of law in mind, we turn to Escutia Diaz's challenge to the agency's denial of relief from removal. Escutia Diaz urges us to overturn the agency's

7

(1) denial of a continuance, (2) finding that her family membership is not a central reason for any harm she has faced or would face in Mexico, and (3) finding that she would not more likely than not be tortured in Mexico. We discern no error.

1

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. Escutia Diaz challenges the IJ's denial of her motion for a continuance but fails to persuasively explain how that denial amounted to an abuse of discretion. We agree with the government that Escutia Diaz has not indicated "what additional evidence or theories her expert might have provided in light of [*Matter of A-B-*] and how such evidence would have been relevant and material to her case." Resp't Br. 19. Indeed, the IJ told Escutia Diaz's former counsel that "the problem" with his argument for a continuance is that it basically just asks for more time to "come up with something." A.R. 117. We observe nothing in the record or in Escutia Diaz's submissions to this Court that casts doubt on that characterization. Because the IJ's decision to deny a continuance was not "arbitrary, irrational or contrary to law," we uphold it under the deferential abuse-of-discretion standard. *Khan*, 448 F.3d at 233.

2

The BIA upheld the IJ's denial of Escutia Diaz's asylum and withholding-of-removal applications because, even assuming that Escutia Diaz's family-based group was cognizable, Escutia Diaz "has not demonstrated that her membership in the group was or will be 'at least one central reason' for her harm." A.R. 4 (quoting *Matter of A-B-*, 27 I. & N. Dec. at 343). We uphold this finding as supported by substantial evidence. While

8

Escutia Diaz speculates in her brief that the Knights Templar targeted her because of her father's involvement in politics, she admitted before the IJ that she does not know why the gang targeted her. Additionally, Escutia Diaz acknowledged in her brief to the BIA that the Knights Templar did not mention her father's political history when it tried to extort her. Nothing in the record compels reversal of the agency's determination that the Knights Templar was "primarily and indiscriminately motivated by monetary gain and criminality, rather than persecution on account of a protected ground." A.R. 4. As this Court recently reiterated, "an alien targeted out of a simple desire for money has not experienced persecution on account of a ground protected by the INA." *Thayalan*, 997 F.3d at 144.

Escutia Diaz has shown neither past persecution nor a well-founded fear of future persecution on account of a protected ground. She is therefore ineligible for asylum. *See* 8 U.S.C. § 1158(b)(1)(B)(i) (placing the burden of proof on the asylum applicant to "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"). And because Escutia Diaz is not eligible for asylum, she "is 'unable to meet the [higher] standard for withholding of removal.'" *Thayalan*, 997 F.3d at 145 (alteration in original) (quoting *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348–49 (3d Cir. 2008)). The agency properly denied Escutia Diaz's applications for both forms of relief from removal.[1]

---

[1] Because we uphold the agency's nexus finding, we need not address its determination that Diaz's family-based group was not cognizable. Indeed, in light of *Matter of L-E-A-*,

The BIA upheld the IJ's denial of Escutia Diaz's CAT claim because the evidence did not establish that she would more likely than not be tortured. Escutia Diaz contends that the BIA erred by providing only "cursory review" of her arguments on appeal. Pet'r Br. 21. We disagree. As the government correctly points out, Escutia Diaz "herself provided only cursory support for her CAT protection claim in her administrative appeal brief." Resp't Br. 35. Where, as here, nothing in the record compels a finding that Escutia Diaz would more likely than not to be tortured, we may not disturb the agency's finding that no likelihood of torture exists. *See Grijalva Martinez*, 978 F.3d at 871 & n.11. The agency properly denied Escutia Diaz's CAT claim.

\* \* \*

For the foregoing reasons, we will deny the petition for review.

---

28 I. & N. Dec. 304 (A.G. 2021), the government now declines to "defend this aspect of the [BIA's] decision." ECF No. 28 (letter submitted by the government under Federal Rule of Appellate Procedure 28(j)). However, the government correctly points out that *Matter of L-E-A-* "does not impact the agency's independently dispositive nexus determination in this case." *Id.*