**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 21-2556

———————————

JOEL RIVERA-SANTIAGO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

———————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 205-384-081)

Immigration Judge: Annie S. Garcy

———————————

Submitted Under Third Circuit L.A.R. 34.1(a):
May 6, 2022

———————————

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR., and PORTER,
*Circuit Judges*.

(Filed: September 8, 2022)

———————————

OPINION*

———————————

—————————————

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

PORTER, *Circuit Judge.*

Joel Rivera-Santiago, a citizen of Guatemala, petitions for review of a Board of Immigration Appeals ("BIA") order upholding the denial of his application for relief under the Convention Against Torture ("CAT"). Substantial evidence supports the BIA's finding that Rivera-Santiago is not likely to be tortured upon return to Guatemala. So we will deny the petition for review.

I

Rivera-Santiago entered the United States unlawfully, so the Department of Homeland Security placed him in removal proceedings. 8 U.S.C. § 1182(a)(6)(A)(i). At his immigration hearing, Rivera-Santiago conceded he was removable and sought asylum, withholding of removal, and protection under CAT. Rivera-Santiago claims that if he returns to Guatemala he will be persecuted and tortured by the 18th Street gang, a criminal organization that he contends operates with the acquiescence of the Guatemalan government.

In support, Rivera-Santiago cites threats and violence that he, his girlfriend, and his family have faced in Guatemala. Rivera-Santiago's former romantic partner, Erika Rodriguez, became involved with 18th Street gang after separating from Rivera-Santiago. She has since harassed Rivera-Santiago and his current girlfriend. Members of the 18th Street gang harassed Rivera-Santiago's current girlfriend as well, attempting to extort money from her at her workplace and inquiring about Rivera-Santiago's whereabouts.

Three years after Rivera-Santiago separated from Rodriguez, a group of police officers robbed him by threatening to arrest him on false charges if he did not hand over

his cell phone, watch, and wallet. Several months later, three people beat and robbed Rivera-Santiago at a bus stop. Rivera-Santiago reported neither incident to the police. He believes both were instigated by Rodriguez and the 18th Street gang, but none of the robbers mentioned Rodriguez or the gang to him. In addition, the 18th Street gang killed two of Rivera-Santiago's cousins. But Rivera-Santiago admits that their murders have nothing to do with him.

The Immigration Judge ("IJ") denied Rivera-Santiago's application for asylum as time barred. She denied his application for withholding of removal because Rivera-Santiago had not proven that his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. She also denied Rivera-Santiago's application for CAT relief, holding that Rivera-Santiago had not shown that he would likely be tortured if he returned to Guatemala. The IJ concluded that Rivera-Santiago failed to show that the two robberies he faced were connected, and that, because the robbers had neither threatened continuing harm nor repeated their conduct, the robberies did not establish that Rivera-Santiago would face future harm in Guatemala. The IJ further found that the murders of Rivera-Santiago's cousins were unconnected to Rivera-Santiago and that Rivera-Santiago's girlfriend had suffered no physical harm at the hands of the 18th Street gang. So, taken together, none of the evidence Rivera-Santiago cited established a likelihood of future torture.

Rivera-Santiago sought review of the IJ's denial of CAT relief from BIA. He did not appeal her denial of asylum or withholding of removal. The BIA affirmed, agreeing

with the IJ that Rivera-Santiago failed to establish a likelihood that he would be tortured if he returned to Guatemala. This petition for review followed.

## II[1]

We review the BIA's order, considering the IJ's ruling only to the extent the BIA adopts it. *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude [to the contrary].'" *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citation omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal conclusions de novo. *Id.*

## III

To be eligible for CAT relief, an applicant must show that "it is more likely than not [that he] would be tortured if removed" and that "public officials will acquiesce in the likely treatment." *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019). "To determine whether an applicant has met the burden of establishing that it is more likely than not he would be tortured if removed, the IJ must address two questions: (1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture? In the first part of the inquiry, the IJ reviews the evidence and determines future events more likely than not to occur. These findings are

---

[1] The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(a) and 1240.15. We have jurisdiction under 8 U.S.C. § 1252(a). Venue is proper in this Court because proceedings before the IJ were completed in New Jersey. 8 U.S.C. § 1252(b).

4

made up of facts." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quotation marks and citation omitted). "The IJ then determines whether the likely harm qualifies as torture under the governing regulations." *Id.*

Rivera-Santiago argues that the BIA failed to adequately consider his contention that the IJ skipped the first step of this analysis. But the BIA did consider this argument and rightly concluded that the IJ did not skip this step. The IJ's finding that Rivera-Santiago failed to establish a likelihood of harm if he returned to Guatemala was central to her decision. She noted that the police officers who robbed Rivera-Santiago made "[n]o threat of continuing harm" and that the robbers at the bus stop "have not repeated their conduct." App. 15. The IJ also noted that the murders of Rivera-Santiago's cousins were "not connected to him in any objective way" and that the harassment Rivera-Santiago's girlfriend faced never amounted to physical harm. App. 15–16. These findings make the IJ's determination clear: Rivera-Santiago failed to establish that he was likely to be harmed if he returned to Guatemala. Rivera-Santiago has not established a likelihood of future torture because he has not established a likelihood of future harm.

Rivera-Santiago also argues that the BIA erred in affirming the IJ's holding that the robbery by police officers was not past torture when the IJ did not analyze whether the robbers acted under color of law. But the IJ did not need to reach this question. Whether or not those officers acted under color of law, the IJ determined that their actions did not portend future harm, and so, could not support the conclusion that Rivera-Santiago was likely to be tortured in the future. *See Myrie*, 855 F.3d at 516.

Finally, Rivera-Santiago argues that the BIA and IJ erred in their factual finding that he had not established a likelihood of future harm, especially in light of finding his testimony credible. Rivera-Santiago bears the burden of showing that those past harms portend harm in the future. *Quinteros*, 945 F.3d at 786. The BIA considered the facts Rivera-Santiago presented and concluded that he had not made that showing. Those "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020). And the BIA's findings are consistent with taking Rivera-Santiago's account of events as true. That Rivera-Santiago suffered harm when he was last in Guatemala does not necessarily show that he will be harmed there in the future. *See id.* at 871. Neither does evidence that Guatemala is often unsafe as a general matter establish that Rivera-Santiago will be harmed if he returns there. *See id.* The BIA did not err in its finding that Rivera-Santiago failed to show that he would be harmed upon his return to Guatemala.

\* \* \*

Rivera-Santiago is entitled to CAT relief only if he can show that it is more likely than not that he will be tortured if he returns to Guatemala. The BIA found that Rivera-Santiago failed to establish that is more likely than not that that he will be tortured because he did not show a likelihood of harm upon his return. A reasonable fact finder could agree with that determination. We will deny the petition for review.

6